United States District Court
District of Rhode Island

| | |
|---|---|
| Kenneth N. Pladsen Jr. (# 131420), plaintiff, -VS- Director A.T. Wall, Warden James Weeden, Deputy Warden, D. Collins., Joseph Di Nitto, Jake Gadsen, Lieutenant Galligan, Robert Holland, Correctional officer Pizzo, K-9. Correctional Officer John Doe, Fredric Friedman, Dr. M. Poshkus, Dr. M Bauermeister, Dr. Lowell McRoberts, Nancy Hill, R.N., Pauline Marcussen, defendants, All Defendants are sued in both official and individual capacities. | Civil Action No: CA 07 323 S<br>* Jury Trial Demanded *<br>July, 31, 2007 |

## Complaint

1) This action is brought pursuant to 42 U.S.C. 1983 and Title II of the American Disabilities Act. (A.D.A. herein), seeking Punitive and Compensatory damages on behalf of the plaintiff, Kenneth N. Pladsen Jr, who suffers from serious mental illness,

1) (continued) and is currently confined in the Dept. of Corrections in the state of Connecticut. The plaintiff alledges that by knowingly confining him under conditions in the Rhode Island Dept. of Corrections (RIDOC herein) state super-maximum prison, known as the "H.S.C." unit facility, which were certain to cause him great suffering and exacerbation of his severe mental illness, defendants inflicted cruel and unusual punishment on the plaintiff in violation of the 8th Amendment of the U.S. Constitution and American Disabilities Act, and subjected the plaintiff to punishment in violation of the 14th Amendment and A.DA. The plaintiff also alledges the torts of assault, battery, and negligence.

Jurisdiction

2) This court has subject matter jurisdiction of this action pursuant to 28 U.S.C. § 1331 because this action arises under the Constitution and laws of the United States, and pursuant to 28 U.S.C. § 1343 (a)(3), because this action seeks to redress deprivation, under color of law, of civil rights.

3) This court has supplemental jurisdiction over the plaintiffs state law tort claims under 28 U.S.C. § 1367

4) This court has jurisdiction to grant declartory relief pursuant to 28 U.S.C. §§ 2201 and 2202, and Fed. R. Civ. P. 57.

5) This court has jurisdiction under title II of the American Disabilities Act.

## VENUE

6) Venue is proper in this judicial District pursuant to 28 U.S.C. § 1391(b) because defendants reside in this district and because a substantial part of the events and omissions giving rise to the plaintiffs claims occurred in this district.

## Parties

7), Plaintiff, Kenneth Pledsen JR. was a sentenced inmate in the care of the R.I. D.O.C. through an interstate compact agreement as a Connecticut state prisoner. The plaintiff is currently housed in Somers, Connecticut.

8) Defendant A.T. Wall, is the director of the Rhode Island Department of Corrections, at all times relevent.

9) Defendant JAMES WEEDEN is the WARDEN of the Rhode Island D.O.C. H.S.C. facility at all times relevent.

10) Defendant D. Collins at all times relevent was the Deputy Warden at the H.S.C. facility

11) Defendant Joseph DiNitto at all times relevent was the director of inmate classification for the R.I. D.O.C.

12) Defendant JAKE GADSEN at all times relevent was the R.I.D.O.C. director of Institutions and operations.

13) Defendant Galligan at all times relevent was a R.I. D.O.C. Lieutentant supervising control of inmate grievances at the H.S.C. facility.

14) Defendant Robert Holland at all times relevent was the R.I.D.O.C.'s Classification BOARD chairman

15) Defendant Pizzo was at all relevent times a correctional officer at the R.I. D.O.C.'s "A.C.I." facility.

16) At all times Relevent, Defendant John Doe was a K-9 officer employed by the RI DOC.

17) Defendant Fredric Friedman at all times relevent was employed by the RI.D.O.C. as the Director of Behavioral health services.

18) Defendant M. Poshkus. M.D., was a supervisor employed by the R.I. D.O.C. at all times relevent.

19) Defendant M. Bauermeister was a psychiatrist at all times relevent employed by the R.I. D.O.C.

20) Defendant Lowell McRoberts, at all times relevent was employed by the R.I. D.O.C. as a psychiatrist.

21) Defendant Nancy Hill at all times relevent was employed as a Registered Nurse at the "A.C.I." facility by the R.I.DOC.

22) Defendant Pauline Marcussen at all times relevent was employed by the RI.DOC. as the Administrator of medical Records.

## Statement of Facts

23) The plaintiff has a long and extensively documented history of severe mental illness. The Connecticut Dept of Corrections mental health staff have designated the plaintiff as "S.M.I." or Severely Mentally ill, classification. He has been diagnosed as having "delusional disorder with severe paranoia." The plaintiff, 1 week prior to his transfer to the R.I. D.O.C. was independently evaluated by Dr. Patrick Fox by D.O.C. request, and diagnosied the plaintiff as being schizophrenic. Due to this diagnosis and classification a special treatment plan and housing are required. Prior to transferring the plaintiff to R.I. D.O.C. per an out of state transfer under the interstate compact agreement, R.I. D.O.C. and

23) (continued) defendants were well aware of the special needs, housing, treatment, medication, and the plaintiffs history of suicidal acts and severe self mutilation. Nonetheless, the plaintiff was accepted as a forced transfer and admitted to the "A.C.I." facility of the RI DOC. on 6-13-06.

24) A medical/mental health screening was done at intake by defendant Nancy Hill, R.N. This was done in a non-confidential area with several correctional officers present. It was again revealed to defendant Hill that the plaintiff had several suicide attempts in the past and numerous scars due to self mutilation.

25) Then the plaintiff was forced by threat of violence by Correctional officers to submit to having his blood drawn for an AIDS/HIV test. The plaintiff was also under threat of violence to sign a paper to agree to do so, despite his pleas not to do so.

26) The plaintiff was then forced to strip naked and placed on a suicide watch in the hospital unit. Even though he made very cleare he was not suicidal. He was kept this way for 3 days.

27) Despite numerous warnings from the DOC. in Connecticut to not discontinue the plaintiffs medications the RI D.OC., specifiely defendant Bauermeisten, discontinued all meds immediately without even seeing the plaintiff or weening the plaintiff off, thus causing withdrawl symtoms and making his body shake uncontrollably

28) Despite the plaintiffs severe mental illness, the plaintiff went for 5 days with no meds at all, due to the discontinuation of his meds and a waiting order for a new non-effective regimine ordered by Dr. Bavermeister against the wishes of the plaintiff. No monitoring went on, and the plaintiff became acutely psychotic on 6-26-06 after no mental health treatment, monitoring, or medications.

29) On 6-26-06 despite waiting and requesting for emergency mental health intervention and none was forthcoming for days, the plaintiff was hearing voices, acutely psychotic, suicidal, was issued a razor by unit staff which the plaintiff used to make numerous large gashes to his upper thighs, scrotum, and penis. After about 20 minutes of cutting himself, a correctional officer was notified by an inmate tierman and a medical code was called.

30) The plaintiff was first broght to an outlet mall clinic called "STAT CARE" and it was deemed to be too serious to deal with and was then brought to Rhode Island Hospital. The plaintiff received over 100 stitches and also had to be superglued back together which caused severe pain, blood loss, and injuries to his penis, scrotum + thighs.

31) The plaintiff still never received any medication or any sort of psychological evaluation even after cutting himself despite his begging for medication to stop the voices in his head.

32) Instead, once back from the hospital and at the "A.C.I." facility the plaintiff was assaulted twice by defendant Pizzo and then he was tortured by the K-9 correctional officer by having the plaintiff stand completely defenseless and naked while the K-9 attack dog would lunge at the plaintiff attempting to bite the plaintiff while defendant John Doe would yank the dog back and forth for the amusement of defendant Pizzo who punched the plaintiff in the back of his head and slapped him accross the face while asking for help and his medications.

33) Then the plaintiff was left in a cell naked all night long with no security blanket, freezing cold while being taunted by defendant Pizzo, and continually threatened with more violence. The plaintiff was also denied any food to eat by defendant Pizzo.

34) During these events the plaintiff did not resist or threaten the officers in any fashion or break any prison rules. At no time did the plaintiff receive any disciplinary action.

35) That on 6/27/07 the plaintiff was seen by DR. O. Edoro and received two orders. One for pain medication for a 30 day period, and the second was an antibiotic for a period of 10 days. At no time did the plaintiff ever refuse these medications, even asked repeatedly for them and was denied.

36) On 6-27-07 a Classification hearing was held in "absentia" with no prior notice, no witness testimony, or being able to speak, was placed into the "Administrative Segregation" status also known as "C-status". This was done with no due process, no real hearing, or any disciplinary issues. On the contrarry, the plaintiff followed all rules and never was sanctioned for any disciplanary issues.

37) On 7/15/07 the plaintiff wrote a letter to defendant DiNitto appealing the placement in Administrative Segregation, and was denied. This placement was done arbitrarily and without reason or merit other then retalliation for a rumor that the plaintiff alledgedly raped a female guard in CT D.O.C. which was completely false. The plaintiff has never ever even been accused of raping any staff in Connecticut or anywhere else.

<u>H.S.C. Conditions of Confinement</u>

38) Prisoners, including the plaintiff at H.S.C. are subjected to severe social isolation and extreame sensory deprivation, that approaches the limits of human endurance.

39) The plaintiff was solely placed in the Administrative Segregation program because of his severe mental illness as in writing from Scott A. Tirocchi, a mental health clinician. This is common practice since no mental health unit exists.

40) The cell doors at H.S.C. are solid steel. The only opening is a small food port below waist level. The "Foodslot" is used to pass food items, and mail

41) The plaintiff was only allowed out of his cell for showers and 5 hours of recreation a week in a modified dog cage.

42) At all times when out of the cell handcuffs and shackles are used. As an inmate at H.S.C. the plaintiff was deprived virtually of all social contact and environmental stimulation. He was allowed no congregate activity and very few possessions. There are no educational or other programming, there are no mental health programs or groups. Because of the plaintiffs severe mental illness and virtually no staff to diagnose or treat the plaintiff at times he is unable to read or write spending months if not years, in a psychotic state, in almost total ilkness and/or out of his mind.

43) Mental illness is prevelent at H.S.C. Previously healthy inmates become mentally ill as a result of confinement under these conditions. With regard to the plaintiff, who was already mentally ill upon his arrival, conditions at H.S.C. caused serious and catastrophic deterrioration in his mental health.

44) Despite the overwhelming need, mental health services are systematically inadequate. There is a severe staffing shortage both of mental health professionals and nursing staff, which is clearly insufficent to meet the needs of the plaintiff and population in general. As a result, both monitoring and treatment of the plaintiff was severely inadequate. Although the plaintiff had been prescribed powerful psychotropic medications with potentially dangerous side effects, he was rarely seen by mental health staff. And when mental health staff did speak to him, it was cell front with no confidentiallity.

45) Due to the oppressive conditions of confinement and inadequate mental health services at H.S.C. the prisoners, including the plaintiff become mentally ill, or their mental illness worsens. Excessive force is a common occurance at H.S.C. and it exacerbates the condition of the plaintiffs mental illness. Custodial staff are not trained in the identification and management of mentally ill prisoners. thus, Thus when prisoners manifest their illness by self-harm, or other behaviors or even requesting mental health intervention, H.S.C. staff often respond with force or not at all rather than with appropriate mental health interventions or become verbally abusive to the plaintiff.

GENERAL FACTUAL ALLEGATIONS

46) The conditions described in this complaint resulted in gratuitous pain and suffering and posed an imminent danger of serious illness, did result in serious injury to the plaintiff who suffers from mental illness.

47) In imposing the conditions described in the complaint defendants have acted with deliberate indifference to the serious health, safety, and mental health needs of the plaintiff who is severely mentally ill, and the defendants have been made repeatedly aware of this, but failed to take corrective action.

48) As a direct and proximate result of the acts and ommissions of the defendants herein described, the plaintiff suffered physical pain, emotional pain, severe anxiety, terror, as well as the loss of the constitutional rights described herein.

49) Each of the acts described by the plaintiff were intentional, discrimitory, and inspired by malice.

50) The plaintiff attempted several times to exhaust his remedies under the Prison Litigation Reform Act, but WAS refused to be allowed to get grievance forms or utilize the grievance process and was outright denied by Lt. GALLIGAN, Deputy WARDEN Collins and Warden Weeden, saying these issues are non-grievable. (see attatched forms)

## CAUSES OF ACTION

51) By subjecting the plaintiff who suffers from severe mental illness to the conditions of confinement described herein, with full knowledge of those conditions AND of their devestating effects on the plaintiff, defendants have acted with deliberate indifference to the plaintiffs serious health, safety, and mental health needs and subjected the plaintiff to cruel and unusual punishment that is atypical and significant hardships in violation of the 14th + 8th Amendments to the U.S. Contstitution, as enforceable through 42 U.S.C. § 1983, Title II of the American Disabilities Act, and 42 U.S.C. § 12101 (b)(4).

## PRAYER FOR RELIEF

Wherefore, the plaintiff respectfully requests that the court:

1) Issue a declaratory judgement that the actions of defendants described here in are unlawful and constitute cruel and unusual punishment in violation 8th + 14th Amendments to the U.S. Constitution, punishment in violation of the 14th

1) (continued) Amendment of the U.S. constitution and the American Disabilities Act.

2) Award compensatory damages in amounts sufficient to compensate the plaintiff for mental anguish, pain, torture, assault, and stress he has endured due to the deliberate actions of the defendants.

3) Award punitive damages in amounts sufficent to deter the defendants from acting in the same fashion in the future and to remind them of their constitutional duties.

4) Grant plaintiff reasonable attorney fees and costs pursuant to 42 U.S.C. § 1988 and other applicable law.

5) Grant other such relief as the court as the court considers just and proper.

Respectfully submitted,

Kenneth N. Pladsen Jr
2749 Elson Green Ave.
Va. Beach, Va. 23456

[signature]
-Pro Se-

CLAIM FOR TRIAL BY JURY

The plaintiff claims trial by jury of the issues in this case.

the plaintiff

[signature]

Kenneth N. Pladsen Jr, Prose-