**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| **KENNETH N. PLADSEN, JR.** | : | |
| | : | |
| **v.** | : | **C.A. No. 07-323S** |
| | : | |
| **DIRECTOR A.T. WALL;** | : | |
| **WARDEN JAMES WEEDEN;** | : | |
| **DEPUTY WARDEN , D. COLLINS;** | : | |
| **JOSEPH DINITTO; JAKE GADSEN;** | : | |
| **LIEUTENANT GALLIGAN;** | : | |
| **ROBERT HOLLAND;** | : | |
| **CORRECTIONAL OFFICER PIZZO;** | : | |
| **K-9 CORRECTIONAL OFFICER JOHN DOE;** | : | |
| **FREDRIC FRIEDMAN;** | : | |
| **DR. M. POSHKUS; DR. M. BAUERMEISTER;** | : | |
| **DR. LOWELL McROBERTS;** | : | |
| **NANCY HILL, R.N.; PAULINE MARCUSSEN** | : | |

**DEFENDANT DR. M. POSHKUS' EXPERT WITNESS DISCLOSURE**

Now comes defendant Dr. M. Poshkus and hereby provides his expert witness disclosure as required by Rule 26 of the Federal Rules of Civil Procedure, and pursuant to the Pretrial Order of this Honorable Court.

**Donald C. Kern, M.D., M.P.H., C.C.H.P.**
**Sudbury, Massachusetts**

Attached and incorporated hereto is the expert report generated by Donald C. Kern, M.D., M.P.H., C.C.H.P. (***Exhibit A***), as well as his *Curriculum Vitae* (***Exhibit B***).

In addition to the expert witness identified above, defendant Dr. M. Poshkus reserves the right to rely upon the testimony of the co-defendants, as well as the testimony of representatives of the Rhode Island Department of Corrections Adult Correctional Institution. This defendant further reserves the right to call as expert witnesses any of the plaintiff's health care providers, including any treating providers who may be identified by the plaintiff.

Defendant, Dr. M. Poshkus
By his attorneys,

**RATCLIFFE BURKE HARTEN & ELIAS, LLP**

Jay M. Elias, Esquire (#3050)
1600 Financial Plaza
Providence, RI 02903
401.331.3400 401.331.3440 [Fax]
E-Mail: jelias@rbhelaw.com

**CERTIFICATION**

I hereby certify that a true copy of the within was mailed, postage prepaid, on this 1st day of May, 2008, to the following:

***Legal Mail/Confidential***
Mr. Kenneth N. Pladsen, Jr., #1114353
I.M.C.C.
P. O. Box A
Oakdale, IA 52319

***Legal Mail/Confidential***
Mr. Kenneth N. Pladsen, Jr., #131420
2749 Elson Green Avenue
Virginia Beach, VA 23456

Michael B. Grant, Esquire
Department of Corrections
40 Howard Avenue
Cranston, RI 02920

Thomas A. Palombo, Esquire
Attorney General's Office
150 South Main Street
Providence, RI 02903

*Expert Witness Disclosure*

2/08

# CURRICULUM VITAE

## Donald C. Kern, MD, MPH, CCHP

Address: 7 Hammond Circle
Sudbury, MA 01776

TEL: (978) 443-1897

e-mail: kern@massmed.org

Education history:

| | |
|---|---|
| 9/66 - 6/69 | Westfield High School, Westfield, New Jersey |
| 9/69 - 6/73 | BA, Mathematics and Economics, Haverford College, Haverford, PA |
| 9/73 - 6/77 | MD, Tufts University School of Medicine, Boston, MA |
| 7/77 - 6/80 | Residency, Internal Medicine, Creighton University, Omaha, NE |
| 7/80 - 6/82 | MPH, Epidemiology and Biostatistics Section (Research Concentration) Boston University School of Public Health |
| 7/80 - 6/82 | Fellowship, General Internal Medicine, Boston University School of Medicine |
| 7/82 - 6/84 | Fellowship, Geriatric Medicine, Edith Nourse Rogers Memorial Veterans Administration Hospital, Bedford, MA |

Work history:

| | |
|---|---|
| 7/82 - 8/95 | Staff Physician, Edith Nourse Rogers Memorial Veterans Administration Hospital, Bedford, MA |
| 8/95 - 9/96 | Medical Director, MCI-Shirley |
| 8/95 - 9/96 | Medical Director, MCI-Lancaster |
| 9/96 - 8/97 | Medical Director, MCI-Concord |
| 8/97 - 11/03 | Medical Director, MCI-Old Colony Correctional Center |
| 11/03 – 6/04 | Medical Director; MCI-Cedar Junction |

11/03 – 6/04 Associate Program Medical Director, Program in Health Care and Criminal Justice, Commonwealth Medicine, UMASS Medical School
7/04 – 7/05 Medical Director, Correctional Health Services, Health Care Access & Improvement, Department of Health and Mental Hygiene, The City of New York
7/05 – 3/06 Special Consultant, Correctional Health Services, Health Care Access & Improvement, Department of Health and Mental Hygiene, The City of New York
4/06 – Consultant in Correctional Health

Other offices and appointments:

1979 - 1981 Member, Council on Continuing Physician Education, American Medical Association
1980 - 1984 Delegate from Massachusetts to the American Medical Association-Resident Physician Section
1982 - 1995 Assistant Professor, Boston University School of Medicine
1983 - 1995 Assistant Professor, Boston University School of Public Health
1984 - 1991 Member, Quality Assurance Board, Edith Nourse Rogers Memorial Veterans Administration Hospital, Bedford, MA (Chairman, 1984-1989)
1990 - 1997 Delegate, Massachusetts Medical Society House of Delegates
1991 - 1997 Member, Committee on Legislation, Massachusetts Medical Society
1999 - 2005 Physician Surveyor, National Commission on Correctional Health Care
2002 - Member, Budget Committee, Society of Correctional Physicians
2004 - Member, Board of Directors, National Commission on Correctional Health Care
2005 - Senior Physician Surveyor, National Commission on Correctional Health Care

Professional Societies:

- Middlesex Central District Medical Society
- Massachusetts Medical Society
- Massachusetts Public Health Association
- Society of Correctional Physicians
- American College of Physicians
- American College of Preventive Medicine
- American Geriatrics Society

Certificates and Licenses:

- Diplomate, National Board of Medical Examiners
- Diplomate in Internal Medicine, American Board of Internal Medicine
- Diplomate in Public Health and General Preventive Medicine, American Board of Preventive Medicine
- Certificate of Added Qualifications in Geriatric Medicine, American Board of Internal Medicine
- Certificate in Geriatrics, Veterans Administration
- Certified Correctional Health Professional, National Commission on Correctional Health Care
- Medical License, Commonwealth of Massachusetts
- Medical License, State of New Jersey
- Medical License, State of New York

Honors:

1988 - Honorary Advisor, Beijing Medical University
1988 - Fellow, American College of Physicians
1988 - Fellow, American College of Preventive Medicine
1989 - Fellow, American Geriatrics Society

Elective Offices

1986 - Member, Board of Health, Town of Sudbury, MA (Chairman, 3/88-3/89, 3/91-3/92, 3/93-3/95, 3/97-3/98, 3/00-3/01; 3/03-3/04)
2003 – 2007 Treasurer, Society of Correctional Physicians
2005 – 2006 Member, Executive Committee, Board of Directors, National Commission on Correctional Health Care
2007 - President-Elect, Society of Correctional Physicians

Corrections Related Presentations:

- Invited speaker, 20th Annual Conference on Correctional Health Care, National Commission on Correctional Health Care, 1996
- Invited speaker, 23rd Annual Conference on Correctional Health Care, National Commission on Correctional Health Care, 1999

- Invited speaker, 24th Annual Conference on Correctional Health Care, National Commission on Correctional Health Care, 2000
- Invited speaker, 6th Semi-Annual Conference: Clinical Update in Correctional Health Care, National Commission on Correctional Health Care, 2001
- Visiting Scholar, Department of Sociology, Rosemont College, Rosemont, PA, 2001
- Moderator, "Prisons and Jails: Important Places for Preventive Medicine and Public Health", Preventive Medicine 2007, American College of Preventive Medicine
- Invited speaker, "A Systemwide Approach to Managing Chronically Ill Patients in Correctional Health Care", Academy of Correctional Health Professionals, March 2007
- Invited speaker, "Is Howard Still Relevant After 230 Years?". National Conference on Correctional Health Care, November 2007
- Invited panel member, "Meet the Experts", Annual Meeting, Society of Correctional Physicians, November 2007
- Moderator, "Correctional Public Health: Current Clinical and Research Challenges", Preventive Medicine 2008, American College of Preventive Medicine

Publication, Peer Review Journals:

- Bedford JE, Alpert EJ, Rivers M, Kern DC, Computer-Assisted Patient Care Management. AAMSI Proceedings, Baltimore, MD, 1983.
- Kern DC, The Computer as Interviewer. Medical Encounter, 3(2):4-5, April, 1985
- Kern DC, Parrino TA, Korst DR, The Lasting Value of Clinical Skills. JAMA, 254(1):70-76, 1985.
- Lowenstein SR, Sabyan EM, Lassen CF, Kern DC, The Benefits of Training Physicians in Advanced Cardiac Life Support. CHEST, 89(4):512-516, 1986.
- Lowenstein S, Marin M, Crescenzi CA, Kern DC, Steel K, The Care of the Elderly in Emergency Departments. Ann Emerg Med, 15(5):528-535, 1986.
- Mandel JH, Rich EC, Luxenberg MG, Spilane MT, Kern DC, and Parrino TA, Preparation for the Practice of Internal Medicine: A Study of Ten Years of Residency Graduates. Arch Intern Med, 1988, Apr:81(4):1255-64.
- Barry PP, Crescenzi CA, Radovsky L, Kern DC, Steel K. Why Elderly Patients Refuse Hospitalization. J Am Geriatr Soc, 36 (5):419-24,

1988.

- Kern DC, Zheng T, Developing Chinese MUMPS for a Beijing Hospital. Proceedings of the MUMPS User's Group, June 1988.
- Kern DC, Friedman RH, Torgerson JS, Burke K, Smith MB, Stollerman J, Hardy WL, Telephone-Linked Computer (TLC) System: A Computer-based Telecommunications System Functioning as a Physician Extender. SCAMC Proceedings, November, 1988.
- Lipkin M Jr., Levinson W, Barker R, Kern DC, Burke W, Noble J, Wartman S, Delbanco TL. Primary Care Internal Medicine: A Challenging Career Choice for the 1990s. Ann Intern Med 112(5):371-8, 1990.
- Ludke RL, Wakefield DS, Booth BM, Kern DC, Burmeister LF. Nonacute Utilization of VA Inpatient Services: Background and Design of a Nationwide Study. Med. Care, 29 (suppl):AS29-39, 1991.
- Booth BM, Ludke RL, Wakefield DS, Kern DC, Fisher EM, Ford TW. Nonacute Inpatient Admissions to VA Medical Centers. Med. Care, 29 (suppl):AS40-50, 1991.
- Booth BM, Ludke RL, Wakefield DS, Fisher EM, Ford TW, Burmeister LF, Kern DC. Nonacute Days of Care Within VA Medical Centers. Med. Care, 29 (suppl):AS51-63, 1991.
- Booth BM, Ludke RL, Wakefield DS, Kern DC, DuMond CE. Relationship Between Inappropriate Admissions and Days of Care: Implications for Utilization Management. Hosp. Health Serv. Admin., 1991, 36(3):421-437.
- Volicer L, Collard A, Hurley A, Bishop C, Kern D, Karon S. Impact of Special Care Unit for Patients with Advanced Alzheimer's Disease on Patients' Discomfort and Costs. J Am Geriatr Soc 42:597-603, 1994.
- Markson L, Fanale J, Steel K, Kern D, Annas G. Implementing Advance Directives in the Primary Care Setting. Arch Intern Med, 154(20):2321-7, 1994.
- Parrino TA and Kern DC. The Alumni Survey as an Instrument for Program Evaluation in Internal Medicine. J Gen Intern Med 9(2):92-95, 1994.
- Markson LJ, Kern DC, Annas GH, Glantz LH. Physician Assessment of Patient Competence. J Am Geriatr Soc 42(10):1074-80, 1994
- Markson LJ, Clark J, Glantz L, Lanberton V, Kern DC, Stollerman G. The Doctor's Role in Discussing Advance Preferences for End-of-Life Care: Perceptions of Physicians Practicing in the VA. J Am Geriatr Soc 45(4):399-406, 1997.

Invited Papers:

- Kern DC, Ludke RL, Wakefield DS, and Booth B, Issues in Studying Appropriateness of Hospitalization in the Veterans Administration. American Medical Review Research Center Second Annual Research Symposium: "Quality Outcome Measurement and Evaluation".

Publications, Books:

- Kern DC, Epidemiology and Prevention of Alzheimer's Disease, in Volicer, L, Ed., Clinical Management of Alzheimer's Disease, ASPEN, 1988.
- Fabiszewski K, Shapiro R, and Kern DC, Medical Care in Advanced Alzheimer's Disease, in Volicer, L, ed., Clinical Management of Alzheimer's Disease. ASPEN, 1988.

Publications, Monographs:

- Friedman RH, Kazis L, Kern DC, Moskowitz M, Steel K, "Geriatric Graduate Medical Education: A Final Report on the Analysis of Issues Related to Exception to Limits to Medicine Reimbursements for Geriatric-Related Graduate Medical Education", Contract No. HRSA 240-BHPr-5(8), 1990.
- Kern DC, Davidson SM, Malouf LG, Ritvo RA, Stollerman GH, "Planning and Implementing Human Resource Management Changes for the Next Twenty Years: Acting Now Prevents Reacting Tomorrow". HSR&D Field Program, Bedford, MA, 1991. (Contracted by the Commission on the Future Structure of Veterans Health Care).

Publications, Abstracts:

- Kern DC, Parrino TA, Korst DR, Teaching Clinical Skills of Lasting Relevance: A Role for the General Internist. Clinical Research. 31(2):641A, 1983.
- Lowenstein S, Lowenstein E, Lassen C, Kern DC, Does Advanced Life Support Training for Hospital Physicians Save Lives? Clinical Research 32(2):226A, 1984.
- Lowenstein S, Marin M, Crescenzi CA, Rosenfeld A, Kern DC, Steel K, Emergency Rooms: Can They Care for the Elderly? J Am Geriatr Soc, 32(4):523, 1984.

- Barry PP, Crescenzi CA, Kern DC, Radovsky L, and Steel K, A Study of Elderly Patients who Refuse Hospitalization. J Am Geriatr Soc, 34(12):910, 1986.
- Elder C, Markson L, Kern DC, Steel K, Procedural and Consultative Delays for Geriatric Patients on an Academic Medical Service. J Am Geriatr Soc 35(10):971, 1987.
- Mandel JH, Rich EC, Luxenberg MG, Spilane MT, Kern DC, and Parrino TA, Preparation for the Practice of Internal Medicine: Study of Ten Years of Residency. Clinical Research, 35(3):750A, 1987.
- Markson L, Kern DC, Annas G, Are Internists Competent to Assess Patient Competence? Clinical Research 38(2):740A, 1990.
- Knoefel JE, Friedman RH, Kazis L, Steel K, Moskowitz M, Kern DC, and Feldman RG, Do Neurology Training Programs Prepare Residents to Care for the Elderly? Results of a National Survey of Geriatric Neurology Training. Neurology 40(Suppl 1):452, April 1990.
- Markson L, Fanale J, Steel K, Kern D, and Annas G, "Making Advance Directives Part of Standard Care: A Pilot Study." Presented at the Annual Meeting of the American Geriatrics Society, Chicago, May 1991.
- Kern, DC, Markson, L, "Developing and Implementing Advance Directive Procedures for Patients with Decision-Making Capacity" Presented at the 119th Annual Meeting of the American Public Health Association, Atlanta, November 1991.

Donald C. Kern, MD, MPH, CCHP
7 Hammond Circle
Sudbury, MA 01776

Jay M. Elias, Esquire
Ratcliffe Burke Harten and Elias LLP
1600 Financial Plaza
Providence, Rhode Island 02903

April 30, 2008

**Re: Kenneth Pladsen v. Michael Poshkus, M.D.**
**Expert Report**

Dear Mr. Elias:

I write in connection with the case of *Pladsen v. Poshkus*.

I have, as you requested, reviewed the materials you sent me regarding Kenneth Pladsen. The materials included the Complaint filed by Mr. Pladsen, and the medical records of the Rhode Island Department of Corrections Adult Correctional Institution.

## Qualifications

My qualifications to serve as an expert witness in behalf of Dr. Poshkus include the following, all of which are more specifically contained in my Curriculum Vitae, a copy of which is attached to this report:

### Pertinent Employment History:

| | |
|---|---|
| 7/82 - 8/95 | Staff Physician, Edith Nourse Rogers Memorial Veterans Administration Hospital, Bedford, MA |
| 8/95 - 9/96 | Medical Director, MCI-Shirley |
| 8/95 - 9/96 | Medical Director, MCI-Lancaster |
| 9/96 - 8/97 | Medical Director, MCI-Concord |
| 8/97 - 11/03 | Medical Director, MCI-Old Colony Correctional Center |
| 11/03 – 6/04 | Medical Director; MCI-Cedar Junction |

11/03 – 6/04 Associate Program Medical Director, Program in Health Care and Criminal Justice, Commonwealth Medicine, UMASS Medical School

7/04 – 7/05 Medical Director, Correctional Health Services, Health Care Access & Improvement, Department of Health and Mental Hygiene, The City of New York

7/05 – 3/06 Special Consultant, Correctional Health Services, Health Care Access & Improvement, Department of Health and Mental Hygiene, The City of New York

4/06 – Consultant in Correctional Health

**Other offices and appointments:**

1979 - 1981 Member, Council on Continuing Physician Education, American Medical Association

1980 - 1984 Delegate from Massachusetts to the American Medical Association-Resident Physician Section

1982 - 1995 Assistant Professor, Boston University School of Medicine

1983 - 1995 Assistant Professor, Boston University School of Public Health

1984 - 1991 Member, Quality Assurance Board, Edith Nourse Rogers Memorial Veterans Administration Hospital, Bedford, MA (Chairman, 1984-1989)

1990 - 1997 Delegate, Massachusetts Medical Society House of Delegates

1991 - 1997 Member, Committee on Legislation, Massachusetts Medical Society

1999 - Physician Surveyor, National Commission on Correctional Health Care

2004 - Member, Board of Directors, National Commission on Correctional Health Care

**Membership in Professional Societies:**

- Middlesex Central District Medical Society
- Massachusetts Medical Society
- Society of Correctional Physicians
- American College of Physicians
- American College of Preventive Medicine
- Academy of Correctional Health Professionals

**Certificates and Licenses:**

- Diplomate, National Board of Medical Examiners
- Diplomate in Internal Medicine, American Board of Internal Medicine
- Diplomate in Public Health and General Preventive Medicine, American Board of Preventive Medicine
- Certificate of Added Qualifications in Geriatric Medicine, American Board of Internal Medicine
- Certificate in Geriatrics, Veterans Administration
- Certified Correctional Health Professional, National Commission on Correctional Health Care
- Medical License, Commonwealth of Massachusetts
- Medical License, State of New Jersey
- Medical License, State of New York

**Honors:**

1988 - Honorary Advisor, Beijing Medical University
1988 - Fellow, American College of Physicians
1988 - Fellow, American College of Preventive Medicine
1989 - Fellow, American Geriatrics Society

**Elective Offices:**

1986 – Member, Board of Health, Town of Sudbury, MA (Chairman, 3/88-3/89, 3/91-3/92, 3/93-3/95, 3/97-3/98, 3/00-3/01; 3/03-3/04)
2003 – 2007 Treasurer, Society of Correctional Physicians
2005 – 2006 Member, Executive Committee, Board of Directors, National Commission on Correctional Health Care
2007 – 2009 President-Elect, Society of Correctional Physicians

I have been employed in the medical profession and, in particular, in the correctional medical profession, for more than ten years and have personally provided care to many hundreds of inmate/patients housed in prison facilities in Massachusetts. In addition, as part of quality improvement and accreditation activities with the National Commission on Correctional Health Care, I have personally reviewed the medical

records of many hundreds of inmate/patients housed in prisons, jails, and juvenile detention facilities around the United States.

My opinions are based on my review of the documents provided, as well as my knowledge of correctional medicine and of antisocial personality disorder, self-injurious behavior, and medication allergies among the incarcerated patient population.

In the past four years, I have testified once as an expert witness. The case was Granger v HPL, heard in the Circuit Court of the Twelfth Judicial Circuit, Will County, Illinois.

My rate of compensation for study and testimony is $300 per hour.

**Opinion and Conclusions**

It is my opinion, to a reasonable degree of medical certainty, that the care and treatment provided to Kenneth Pladsen during his incarceration at the Rhode Island Department of Corrections Adult Correctional Institution (ACI) from June 2006 until his transfer in August 2006, was appropriate and either met or exceeded the accepted standards. It is my further opinion, to a reasonable degree of medical certainty, that the actions of Michael Poshkus, M.D., in his capacity as Medical Program Director of the ACI, either met or exceeded the accepted standards of care in connection with Kenneth Pladsen.

Mr. Pladsen arrived in the Rhode Island Department of Corrections on June 13, 2006, and was seen by nursing staff at 12:40 PM. His paperwork from Connecticut indicated multiple medication allergies, including allergies to penicillin and various pain medications. A list of his prescribed medications in Connecticut, which included Seroquel (which has the generic name quetiapine) and the controlled substance Klonopin (which has the generic name clonazepam) was also part of the paperwork sent from Connecticut. Connecticut also sent some but not all of the actual medications (controlled substances are not allowed to be transferred in this manner). The patient told the nurses that he had multiple scars on his upper thighs. According to the admitting nurse, while the patient was alert and cooperative, he was unclear about his medications, "vague in content when answering health assessment questions" and appeared paranoid. As a reasonable safety precaution, the nurses decided to place the patient on a suicide watch until he could be seen by a psychiatrist. The next morning, in advance of the visit of the psychiatrist, the medical doctor ordered that the

patient could have the medications sent by Connecticut, but the patient refused to take them. The psychiatrist tried to see the patient at 1 PM on June 14, but the patient was aggressive, belligerent and uncooperative and could not be interviewed. Having a psychiatric appointment within 24 hours exceeds the community practice for outpatient psychiatry.

Mr. Pladsen agreed to see the psychiatrist the following morning, on June 15. The patient claimed that "he did not think he had a mental illness". The psychiatrist reviewed the list of medications that the patient had been receiving in Connecticut, and "told him about the risks of Seroquel". The psychiatrist then ordered a medication regimen, different from the Connecticut regimen, that was nevertheless clinically appropriate in the professional judgment of the psychiatrist. The psychiatrist also lowered the level of watch that the patient was on.

A week before his arrival in Rhode Island and at the request of the Connecticut DOC, Mr. Pladsen was evaluated on June 7, 2006, by Patrick Fox, MD, a Consulting Forensic Psychiatrist. Dr. Fox noted that Mr. Pladsen has exhibited both sociopathic and psychotic behaviors. Dr. Fox wrote that "there have been numerous changes to his prescribed psychotropic medical regimen in an effort to ameliorate these symptoms", but that "despite the elimination or reduction of some of his symptoms such as auditory hallucinations, his paranoid delusions persist". Dr. Fox noted that "despite an adequate period of treatment with a sufficient dose of antipsychotic medication, psychotic symptoms persist", including on the day of evaluation "a significant thought disorder as evidenced by loosening of associations, frequent digressions and circumstantiality, as well as illogical and referential thinking". Dr. Fox concluded by recommending that "changes to his psychopharmacological regimen occur", "under the care and supervision of a psychiatrist", "in an effort to maximize effective neurolepsis".

Thus, the Rhode Island psychiatrist might reasonably consider making changes to the Connecticut medication regimen based upon his personal interview with the patient, his own professional judgment, and the assessment of the consulting forensic psychiatrist. It is my medical opinion, to a reasonable degree of medical certainty, that the medication regimen prescribed by the Rhode Island psychiatrist met or exceeded the applicable standard of care. Unfortunately, the patient then refused to take any of the prescribed medications, a behavior he apparently had sometimes exhibited in the past.

Mr. Pladsen was seen again by the psychiatrist on June 16, at which time the watch was discontinued. He was also seen by a mental health clinician that same evening, and again on June 20, when he was noted to be anxious but not suicidal and with "no overt symptoms of psychosis".

On June 26, Mr. Pladsen cut himself with a razor blade, causing "12-15 deep lacerations to bilateral legs" and was sent to the Rhode Island Hospital emergency department for suturing. Absorbable sutures were used and the emergency department clinician recommended that the patient be monitored for infection. The patient did not require any blood transfusions, nor was he kept in the hospital for further monitoring.

Upon his return to the prison, the patient was again placed on watch and was closely monitored by nursing staff. He was seen by a medical physician the next day who initially ordered a penicillin type antibiotic and pain medication. Upon realizing that the patient had listed allergies to these medications, the doctor cancelled the orders before any doses of medication were given to the patient. Instead, the nurses monitored the patient and checked the wound area for any signs of infection. Numerous nursing notes state that the patient slept well, had no complaints (e.g., no complaints about pain), and that the dressings remained clean and dry (i.e., no sign of infection). On July 4, a nurse noted that the wounds were sufficiently healed such that no further dressing changes were needed. Mr. Pladsen was seen by a different medical physician on August 3 for a physical examination and apparently was fully healed with no long term sequelae from this incident aside from the continued presence of scars.

During this time, Mr. Pladsen continued to be seen by both the psychiatrist and mental health clinician. Mr. Pladsen was put on a medication regimen that he found acceptable, and was thereafter mostly compliant with taking his medications. He was even allowed to take a controlled medication, usually "crushed" according to policy to minimize the risk of diversion, in a non-crushed state with the knowledge and presumed consent of Dr. Poshkus, according to a nursing note. Mr. Pladsen left the Rhode Island system later in August 2006 without any further self-injurious behavior.

During his approximately two month long period of incarceration at the Rhode Island ACI, Mr. Pladsen was seen promptly and offered appropriate treatments and medications. His injury on June 26 was

self-inflicted, and he appeared to fully recover from that injury. Information that was sent from Connecticut was made available to the Rhode Island treating staff and was reasonably interpreted and incorporated into Rhode Island treatment plans. It is my medical opinion, to a reasonable degree of medical certainty, that Mr. Pladsen had appropriate access to health care, that medical professionals evaluated him and made appropriate decisions, and that the orders of the physicians involved were properly carried out by the nursing staff.

It is my medical opinion, to a reasonable degree of medical certainty, that the care and treatment provided by the healthcare providers at the ACI met or exceeded the applicable standards of care. Accordingly, it is my opinion, to a reasonable degree of medical certainty, that the actions of Dr. Michael Poshkus, in his capacity as the Medical Program Director of the ACI, met or exceeded the applicable standards of care relative to Kenneth Pladsen.

It is my professional medical opinion to a reasonable degree of medical certainty that the care and treatment provided to Kenneth Pladsen throughout the period of his incarceration at the Rhode Island ACI in 2006 met or exceeded the applicable standards of care.

Sincerely,

Donald C. Kern

Donald C. Kern, MD, MPH, CCHP